UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| WILLIAM R. AUCHEY, | * | |
| --- | --- | --- |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | Civil Action No. 15-30174-MGM |
| NANCY A. BERRYHILL[1], | * | |
| Acting Commissioner of Social | * | |
| Security Administration, | * | |
| | * | |
| Defendant. | * | |

MEMORANDUM AND ORDER REGARDING PLAINTIFF'S MOTION
FOR JUDGMENT ON THE PLEADINGS AND DEFENDANT'S MOTION
TO AFFIRM THE DECISION OF THE COMMISSIONER
(Dkt. Nos. 17 and 24)

September 29, 2017

MASTROIANNI, U.S.D.J.

I. INTRODUCTION

This is an action for judicial review of a final decision by the acting Commissioner of the Social Security Administration ("Commissioner"), regarding an individual's entitlement to Social Security Disability Insurance ("SSDI") benefits pursuant to 42 U.S.C. § 405(g). William Auchey ("Plaintiff") applied for benefits in April of 2012, alleging disability beginning February 24, 2012. He asserts the Commissioner's decision denying him benefits, memorialized in the April 3, 2014 decision of an administrative law judge ("ALJ"), is in error. The parties have filed cross-motions for judgment on the pleadings. Plaintiff claims the ALJ (1) ignored and mischaracterized evidence

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017 and is substituted automatically as the Commissioner pursuant to Federal Rule of Civil Procedure 25(d).

demonstrating Plaintiff suffered persistent mental limitations; (2) improperly failed to consider whether Plaintiff's medication noncompliance either resulted from errors by staff at the residential program where Plaintiff lived or a symptom of Plaintiff's mental illness; (3) relied upon an inaccurate characterization of the disability definition; (4) failed to properly consider provider opinions; and (5) made credibility determinations that were unsupported by the evidence. In response, the Commissioner contends the ALJ's decision was supported by substantial evidence and any legal errors were not harmful.

Though the parties are no doubt familiar with Plaintiff's factual history, the court finds it helpful to set out its own chronology of Plaintiff's history relevant to his application for SSDI, before proceeding to its discussion.

## II.     BACKGROUND

A. Brief Summary of Plaintiff's Mental Health History

Plaintiff was born in 1965 and served in the military for approximately four years during the 1980s. (Dkt. No. 10, Administrative Record ("AR") at 198.) At some point after leaving the military, Plaintiff began working as a janitor and in 2000 he began working for the Spring Grove Area School District. (*Id.* at 44, 206.) The following year he was diagnosed with bipolar disorder. (*Id.* at 44.) On September 2, 2011, Plaintiff was hospitalized for management of bipolar mania after he was found by police wandering along a road following an apparent suicide attempt. (*Id.* at 305-06.) He was hospitalized for a total of eighteen days, including about a week of hospitalization at a hospital run by the Veterans Administration ("VA"). (*Id.* at 306-07.) Prior to his hospitalization, Plaintiff was experiencing stress from his divorce, financial issues, and difficulty at work. (*Id.* at 343.) After discharge, Plaintiff returned to living in his mother's home, resumed working, and continued to receive care through a VA outpatient clinic. (*Id.* at 822-23.)

On January 25, 2012, he reported discontinuing prescribed medications because they "made him feel 'cloudy'" and reducing other medication to avoid feeling "hyped up and weird." (*Id.* at 558, 565.) In February of 2012, Plaintiff stopped working following an outburst at work that occurred because he "was not feeling well." (*Id.* at 537.)

Following an instance of suicidal ideation, he was again hospitalized on an inpatient psychiatric unit on February 29, 2012. Early in that hospitalization a hearing was held to determine whether Plaintiff would be committed involuntarily. (*Id.*) Though Plaintiff attended that hearing, he was not able to remember it several days later. (*Id.*) During his hospitalization Plaintiff received a number of assessments including cognitive assessments which indicated that Plaintiff required 24-hour supervision to remove dangerous objects and help him solve problems arising from small changes in his environment. (*Id.* at 485.) His treatment goals included being able to sustain productivity in a minimally complex task for at least 45 minutes with only minimal redirection and to engage in social conversation without prompting. (*Id.* at 486.)

On March 27, 2012, Plaintiff was discharged to a residential program for veterans with severe mental illness at the Coatesville Veterans Affairs Medical Center ("Coatesville VAMC"). (*Id.* at 407-08, 483, 610.) At that time, Plaintiff had been hospitalized for a total of approximately 46 days in a seven month period. Plaintiff remained in the residential program at the Coatesville VAMC until November of 2012. While in the residential program at the Coatesville VAMC, Plaintiff was assigned a high risk flag related to suicide risk. (*Id.* at 1195). The high risk flag was briefly removed from his file only to be reapplied within a week. (*Id.*). Thereafter, the flag remained on his file for the duration of his placement. (*Id.*).

Shortly after arriving in the residential program at the Coatesville VAMC, Plaintiff filed his application for SSDI benefits. (*Id.* at 198-205.) In an opinion dated May 2, 2012, a state agency reviewing psychologist, Dr. Mitchell Sadar, concluded, without physically meeting or examining

3

Plaintiff, that Plaintiff's mental health issues did not preclude him from working. (*Id.* at 77.) Dr. Sadar described Plaintiff as having "had a recent mental health related hospitalizations [sic]" and that he had been "fairly stable, and employed up until February, 2012." (*Id.*) It is unclear exactly what records Dr. Sadar reviewed before reaching his conclusion or whether Dr. Sadar was aware Plaintiff was hospitalized both in February of 2012 and in September of 2011. At least some documents, including some from an unidentified VA hospital, were received after the date of Dr. Sadar's opinion. (*Id.* at 72.) One day earlier, on May 1, 2012, a licensed clinical social worker, E. Jerome Sturm, wrote a letter in which he stated that Plaintiff's "mental health condition" prevented Plaintiff from "obtaining gainful employment." (*Id.* at 1706.) This letter was not prepared as part of Plaintiff's application for SSDI benefits, and was only provided to the SSA Appeals Council in June of 2015, more than a year after the date of the ALJ's decision.

One provider who saw Plaintiff while he resided at the Coatesville VAMC, psychiatrist Michael Gliatto, MD, indicated that he could not attest to Plaintiff's ability (or inability) to work, though he opined in a treatment note that Plaintiff might be able to work in a supported employment program. (*Id.* at 1206.) Dr. Gliatto also observed Plaintiff to be vacant and unable to understand all that was said to him. (*Id.*) He also suggested Plaintiff's bipolar diagnosis may be a misdiagnosis of schizophrenia or schizoaffective disorder. (*Id.*)

In November of 2012, Plaintiff was discharged from the VAMC Coatsville program. He traveled independently to Massachusetts where he began participating in the Soldier On residential program for homeless veterans at the VAMC in Leeds, Massachusetts. (*Id.* at 1194.) Plaintiff remained at the Soldier On program for approximately a year. He was hospitalized in connection with psychiatric symptoms again from October 23, 2013 through November 6, 2013. Treatment records from Plaintiff's time with Soldier On indicate that between March of 2013 and October of 2013, Plaintiff lost twenty-two pounds as a result of "involuntary weight loss related to psychological

4

cause (decompensated bipolar disorder)," causing his weight to fall below target for his height. (*Id.* at 1488-89.)

Following his discharge in November of 2013, Plaintiff became a resident of Turner House, a residential program that provides housing and support services for homeless veterans. At the time of his hearing in March of 2014, Plaintiff continued to live at Turner House. Though Plaintiff had assistance filing his application while he was in Pennsylvania, he was unrepresented at the time of the hearing. After taking on his case, his current counsel submitted supplemental materials including a letter from a licensed clinical social worker opining in April of 2012 that Plaintiff's mental health issues prevent him from being employable and progress notes from Turner House. These progress notes document significant ongoing support provided to Plaintiff while he was a resident of Turner House. These progress notes also indicate that the director of Turner House drove Plaintiff to his hearing and was prepared to testify about Plaintiff's limitations. (*Id.* at 1701.) However, Plaintiff did not let him testify or even attend the hearing. At the hearing, Plaintiff reported that a friend had driven him to the hearing and did not inform the ALJ that the director of Turner House was there and prepared to testify on his behalf.

III.   STANDARD OF REVIEW

The role of a district court in reviewing an ALJ's decision is limited to determining whether the ALJ's conclusion was supported by substantial evidence and based on the correct legal standard. *See Seavey v. Barnhart,* 276 F.3d 1, 9 (1st Cir. 2001). Substantial evidence exists when "a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the Commissioner's] conclusion." *Rodriguez v. Sec'y of Health & Human Serv.,* 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, . . . but are not conclusive when derived by ignoring evidence . . . ." *Nguyen v. Chater,* 172 F.3d 31, 35 (1st Cir. 1999). Remand is appropriate where the record does not contain "evidence rationally adequate

5

to . . . justify the conclusion" reached by the ALJ. *Roman-Roman v. Comm'r*, 114 Fed. Appx. 410, 411 (1st Cir. 2004).

IV.     DISABILITY STANDARD AND THE ALJ'S DECISION

An individual is entitled to SSDI benefits if, among other things, he has an insured status and, prior to expiration of that status, he was under a disability. *Baez v. Astrue*, 550 F. Supp. 2d 210, 214 (D. Mass. 2008) (citing 42 U.S.C. § 423(a)(1)(A) and (E)). Therefore, Plaintiff must establish disability before his date last insured. *See id.* The ALJ noted Plaintiff's date last insured is December 31, 2017. (A.R. at 25.)

The Social Security Act (the "Act") defines disability, in part, as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). An individual is considered disabled under the Act,

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A). *See generally Bowen v. Yuckert*, 482 U.S. 137, 146-49 (1987).

In determining disability, the Commissioner follows the five-step protocol described by the First Circuit as follows:

> 1) if the applicant is engaged in substantial gainful work activity, the application is denied; 2) if the applicant does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the applicant's "residual functional capacity" is such that he or she can still perform past relevant work, then the application is denied; 5) if the applicant, given his or her residual functional capacity, education, work experience, and age, is unable to do other work, the application is granted.

*Seavey*, 276 F.3d at 5; *see* 20 C.F.R. §§ 404.1520(a)(4).

In the instant case, at step one, the ALJ found that the plaintiff had not performed any substantial gainful activity from his alleged onset date of February 24, 2012 through the last date of the decision. (A.R. at 25.) Moving to step two, the ALJ found that Plaintiff had two severe impairments, affective disorder and bipolar disorder. (*Id.*) At the third step, the ALJ determined that Plaintiff's impairments do not, singly or in combination, meet or medically equal the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 26.) The ALJ based his conclusion at step three in part on a finding that Plaintiff experiences only "mild restriction" in activities of daily living and had "experienced no episodes of decompensation, which have been of extended duration." (*Id.*) At step four, the ALJ found the Plaintiff's residual functioning capacity ("RFC") allowed him to perform "a full range of work at all exertional levels" but subject to various limitations of the complexity of the work and interactions with co-workers and the public. (*Id.* at 26-27.) Among the factors the ALJ cited to support this conclusion was that Plaintiff's mental status examinations were benign when he was in compliance with his medications. (*Id.* at 29.) In light of this RFC, the ALJ found that Plaintiff was capable of performing past relevant work as a school janitor. (*Id.* at 30.) As a result, the ALJ determined that Plaintiff was not disabled and denied Plaintiff's application for SSDI benefits (*Id.*)

V.   ANALYSIS

"[T]he ALJ's decision must include a discussion describing how he or she actually determined the claimant's RFC and the evidence upon which he or she relied." *Torrey v. Barnhart*, 2004 WL 97648, at *5 (D.N.H. January 21, 2004). Remand is appropriate where the ALJ has ignored significant evidence, which, when considered, undermines the reasonableness of the conclusions reached by the ALJ. *See Nguyen*, 172 F.3d at 35. The court is at a loss to understand how the ALJ could conclude Plaintiff had experienced no episodes of decompensation of extended duration

7

when Plaintiff was hospitalized for an entire month in 2012, from the end of February until the end of March and was subsequently discharged to a residential program for individuals with mental illness. Additionally, Plaintiff remained in that residential program for approximately six months, during which time he was subject to restrictions based on suicide concerns. Then, when he finally was discharged, he went to another residential program in which Plaintiff again suffered from decompensated bipolar disorder, ultimately leading to unhealthy levels of weight loss and another psychiatric hospitalization of approximately two weeks. The court finds the ALJ's failure to fully account for these facts and consider their significance is error sufficient to justify remand.

The court is also concerned that the ALJ has failed to consider whether medication noncompliance on Plaintiff's part was actually a symptom of his mental illness and was appropriately treated as such, rather than as evidence he had misrepresented his level of disability. Finally, the court also finds remand is appropriate so that the evidence demonstrating Plaintiff had lived only in supportive residential programs from February of 2012 through the date of the hearing can be included in any assessment of Plaintiff's ability to engage in activities of daily living.

VI. CONCLUSION

For these reasons, the Court ALLOWS Plaintiff's motion (Dkt. No. 17), to the extent that it requests a remand, in order for the ALJ to properly consider evidence related to Plaintiff's psychiatric hospitalizations and continued residence in supported environments. The court accordingly DENIES Defendant's motion for an order affirming the Commissioner's decision (Dkt. No. 24).

It is So Ordered.

   /s/ Mark G. Mastroianni
MARK G. MASTROIANNI
United States District7 Judge